COLE *v.* FINDLEY TOOL & DIE CO., INC.

1. CONTRACTS—WAGES FOR OVERTIME—JURY'S FINDING AS TO AMOUNT.

In action by employee to recover wages due for overtime work over a period of nearly two and one-half years, jury's finding for plaintiff established amount due him where Supreme Court finds no reason for disturbing such amount.

2. APPEAL AND ERROR—JUDGMENT NON OBSTANTE VEREDICTO—EVIDENCE.

On plaintiff's appeal from judgment *non obstante veredicto* against him, Supreme Court must accept his testimony regarding agreement for overtime work as true in determining just what the agreement was.

3. CONTRACTS—DEMAND AS PREREQUISITE TO ACTION FOR WAGES FOR OVERTIME—ABILITY TO PAY.

Formal demand *held,* not a prerequisite to recovery under agreement to pay for overtime work as soon as employer's business improved and its finances would warrant settling it, where company is shown by affidavit of merits of its general manager to have been able at all times to pay plaintiff's claim for overtime.

4. SAME—NOTICE OR DEMAND AS PREREQUISITE TO PERFORMANCE.

Notice or demand is not a prerequisite to performance unless such notice or demand is required by the terms of the contract or the peculiar nature thereof, nor is a demand necessary where the person owing the debt or duty has means of knowing when it becomes due, as well as the opposite party.

5. SAME—PERFORMANCE UPON HAPPENING OF CERTAIN EVENT—DEMAND.

A party who has contracted to do a particular thing upon the happening of a certain event is bound when he knows of the happening of that event to do the thing contracted, without a demand or notice from the obligee.

6. MASTER AND SERVANT—OVERTIME WORK—SECRET AGREEMENT WITH GENERAL MANAGER—AUTHORITY.

Claim that agreement relative to plaintiff's wages for overtime work was a secret one between him and defendant's general manager, and therefore not binding on defendant corporation, *held*, untenable, as it must be presumed the general manager had authority to hire men and determine their rate of pay, and time cards which were open to inspection by any officer of the corporation showed amount of overtime which plaintiff . had put in.

7. ESTOPPEL—DEMAND.

Fact that plaintiff who had been an officer as well as employee of defendant corporation made no claim for overtime wages at time of severing his relations with the company and selling his stock therein to its general manager did not estop him from subsequently bringing action therefor where both parties knew of existence of claim, each had access to records to determine its amount, and there is no evidence that the general manager relied upon any untrue statements made by plaintiff when purchasing latter's stock.

8. INTEREST—VERDICTS—CONTRACT ACTION.

Interest from date of verdict of jury is allowed upon reversal of judgment *non obstante veredicto* in action on contract to pay overtime wages.

Appeal from Wayne; Webster (Arthur), J. Submitted June 7, 1939. (Docket No. 35, Calendar No. 40,237.) Decided September 5, 1939.

Assumpsit by Herman G. Cole against Findley Tool & Die Company, Inc., a Michigan corporation, for sums due for wages. Verdict for plaintiff. Judgment for defendant *non obstante veredicto*. Plaintiff appeals and defendant cross-appeals. Reversed and judgment ordered entered for plaintiff.

*Harry M. Stone* and *N. Calvin Bigelow,* for plaintiff.

*Victor H. DeBaeke* and *Alfred Lindbloom,* for defendant.

SHARPE, J.   Plaintiff began suit in the circuit court of Wayne county to recover for overtime work performed between April 30, 1930, and October 5, 1932.   The jury returned a verdict in favor of plaintiff, but at a later time the trial court entered judgment for defendant *non obstante veredicto* on the ground that the action was prematurely brought before a demand for payment had been made upon the defendant corporation.

Prior to the organization of defendant corporation, plaintiff and a Mr. Van Sickle were employed by the George A. Gloor Company as tool makers and Mr. Findley was superintendent of that company. Upon the formation of the defendant corporation, plaintiff was elected vice-president and at a later date was elected secretary, which office he held until he terminated his relations with the defendant company.

Plaintiff went to work for defendant corporation in 1929 at the rate of $1.30 per hour as foreman and tool maker and was paid for overtime work until sometime during the month of March, 1930.   Sometime during this latter month, Mr. Findley, who was president and general manager of defendant corporation, informed plaintiff that the corporation finances were getting low; and that plaintiff should work overtime without pay, to which plaintiff replied that he was willing to work overtime without pay until things got better.   In January, 1931, plaintiff was paid a regular salary and was told by Mr. Findley that overtime was to be paid in addition to salary; and that the overtime would be kept track of and squared up at some future time.   The time-cards of plaintiff show the amount of overtime worked.   In October, 1932, plaintiff again approached Mr. Findley about this overtime and the following conversation took place:

"After the week ending October 5th, and commencing with the week which ended on the 12th of October, Mr. Findley and I had a talk with respect to overtime work at the shop on 12th street. I approached Mr. Findley in the shop one day and asked him when we were going to make some settlement on this overtime, it was piling up and ought to be taken care of, or something more definite done about it. He said, 'Well, I will tell you what I will do with you; if you want to work on a basis of 80 cents per hour I will pay you overtime now when due at straight time.' That is, he says, 'on past time you agreed to wait for it. I agreed to pay you time and a half for that.' He says, 'After this, if you want to draw your overtime when due, I will pay it to you at the straight time.'

"I asked him when the back overtime would be settled. He said as soon as business improved and the finances of the company would warrant settling it. He says, 'You don't need the money, do you?' I says, 'No, not particularly, only I would like to have it settled up.' He says, 'As long as you don't need the money, why not let it ride? It is safe here, and we will fix it up later on.' After that conversation I put in overtime and it was paid for from week to week as it was put in."

Plaintiff was discharged in December, 1934, and began the present suit February 1, 1935. The cause came on for trial and, just before the court charged the jury, it was suggested by the court that plaintiff withdraw from his claim the amounts claimed due to him for overtime work on Sundays. This he did.

Plaintiff appeals from the judgment *non obstante veredicto* and contends that a formal demand was not a prerequisite to the institution of suit; that the bringing of the suit was in and of itself a demand; and that the evidence shows that a sufficient demand had been made.

Defendant contends that a demand was a prerequisite to institution of suit; that plaintiff did not prove that overtime was due and payable; that plaintiff is estopped to maintain this action because he failed to disclose his claim for overtime at the time of the sale of his stock to Mr. Findley; and that a secret agreement to pay overtime was not binding upon the corporation.

The first question for determination is the nature of the agreement entered into between the parties. The jury found in favor of plaintiff. The amount of the claim is thus established, as we find no reason for disturbing the finding of the jury as to such amount. In view of the fact that a judgment *non obstante veredicto* was directed against plaintiff, we must accept plaintiff's testimony regarding the agreement as true in determining just what the agreement was. See *Triestram* v. *Way*, 286 Mich. 13.

Plaintiff also testified that the card for the week ending October 21, 1931, shows that his rate of pay was $75 per week salary; that there had been another conversation between him and Mr. Findley preceding that, and Mr. Findley said more work was coming in and he could afford an increase to $75.

"*Q.* Was there anything said then about overtime?

"*A.* I asked him if that included the overtime, and he said no; that the overtime would be figured on the basis of $75 a week for a 50-hour week,—it would be $1.50 an hour. It would be figured at time and a half on the basis of $1.50 an hour, which would make $75 a week for 50 hours.

"*Q.* That is, in other words, the overtime was figured at the same rates as $75 would be?

"*A.* Yes."

It appears to us that there was a definite agreement to pay plaintiff for overtime; and that such

payment was to be made as soon as business improved and the finances of the company would warrant settling it. In the affidavit of merits signed by Mr. Findley and filed in the above entitled cause, it is stated that at all times between March 5, 1930, and October 5, 1932, there were always sufficient moneys in the corporation to make payment of any workman's debts owed by said corporation. Under the facts in this case, the corporation was at all times able to pay plaintiff's claim for overtime, but defendant contends that a formal demand was a prerequisite to the institution of suit.

In 12 Am. Jur. p. 887, it is said:

"Notice or demand is not, however, a prerequisite to performance unless such notice or demand is required by the terms of the contract or the peculiar nature thereof. * * * A demand is not necessary where the person owing the debt or duty has means of knowing when it becomes due, as well as the opposite party. Therefore, a party who has contracted with another to do a particular thing upon the happening of a certain event is bound when he knows of the happening of that event, to do the thing contracted, without a demand or notice from the obligee."

Under the facts in this case a demand was unnecessary as defendant corporation owed the debt to plaintiff and promised to pay the same when they were financially able. It is a fact that the corporation was able to pay at all times between March 5, 1930, and October 5, 1932.

We are not impressed by defendant's claim that a secret agreement was entered into which was not binding upon the corporation. Mr. Findley was the general manager of the corporation and it must be presumed that he had authority to hire men and determine their rate of pay. Moreover, plaintiff's

time-cards showed the amount of overtime which plaintiff put in. These cards were not kept in secret places, but were open to inspection by any officer of the corporation.

Nor do we think plaintiff is estopped to maintain this action because he failed to disclose his claim for overtime at the time of his sale of stock to Mr. Findley. Both plaintiff and Findley had equal knowledge that plaintiff had a claim for overtime and both men had access to records to determine the amount of the claim. There is no evidence that Mr. Findley relied upon any untrue statements made by plaintiff when he purchased plaintiff's stock.

The cause is remanded to the circuit court with directions to set aside the judgment entered for defendant and in lieu thereof to enter judgment in favor of plaintiff and against defendant for the sum of $2,058.85, which is the amount determined by the jury, together with interest from October 28, 1936. Plaintiff may recover costs.

Butzel, C. J., and Wiest, Bushnell, Potter, Chandler, North, and McAllister, JJ. concurred.